## COMMISSIONER OF INTERNAL REVENUE v. WILLSON.

### No. 9135.

Circuit Court of Appeals, Sixth Circuit.

Dec. 3, 1942.

Carolyn E. Agger, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Bernard Chertcoff, Sp. Assts. to Atty. Gen., on the brief), for petitioner.

Harry G. Gault, of Flint, Mich., for respondent.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

This petition to review an order of the United States Board of Tax Appeals involves a ruling of the Commissioner determining deficiencies in income taxes against the respondent in the amount of $5,561.54 for the year 1936 and $4,292.84 for the year 1937. The Commissioner added the income of the Frances S. Willson Trust to the net income reported by respondent for each of the taxable years, holding that the income was taxable to the respondent under Section 167, Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 895, and Article 167-1, Regulations 94.

The case arises out of the following facts:

Respondent, a resident of Flint, Michigan, on April 18, 1924, executed a written agreement naming a corporate trustee, whereby she created a life insurance trust which was to terminate upon the death of the survivor of the respondent and her husband, the insured. Simultaneously with the execution of the trust the respondent delivered to the trustee a life insurance policy in the face amount of $25,000, issued on the life of her husband, George C. Willson, under which respondent was the sole beneficiary, together with General Motors stock of the market value of $27,750. The trust agreement provided that the net income of the trust should be used during the lifetime of George C. Willson to pay premiums on life insurance policies held under the trust and that in case there was any surplus income the same should be accumulated and added to the principal of the trust. In the event the net income together with any prior unexpended income should be insufficient to pay all the life insurance premiums the respondent agreed to pay the deficit, if living, and if not, the deficit was to be paid out of the principal of the trust.

Sub-division III of the Trust Indenture reads as follows:

"III. Upon the death of George C. Willson, the husband of the Settlor, the Trustee shall collect the proceeds of any and all Insurance Policies held at that time by it hereunder and shall hold the same, together with any and all securities then held by it as a new Trust Fund, the income and principal of which shall be used, divided and distributed as hereinafter set forth:

"A. The net income from said new Trust Fund remaining from time to time in the hands of the Trustee, shall be paid to the Settlor, if living, in equal installments quarter-yearly or otherwise, during the balance of her life;

"B. In case the said net income from such new Trust Fund shall in the judgment of the Trustee be insufficient to properly maintain and support the Settlor in the manner in which she is accustomed to live, then the Trustee is authorized to use such part of the principal of the Trust Estate as shall be necessary so to maintain and support the Settlor; provided, however, that such use of the principal of the new Trust Fund shall in no instance reduce such principal below the amount of securities or property held by the Trustee as of the close of business on the day immediately preceding the date of death of the Settlor's husband, George C. Willson, except as such a greater reduction of principal is occasioned by virtue of any of the provisions of paragraph IV C, hereof."

Under paragraph IV C the trustee was authorized to make loans or advancements to the estate of the insured, George C. Willson, to pay claims, taxes or other indebtedness or any bequest or inheritance thereof. Upon the death of the respondent or her husband, if he survived her, the corpus of the new trust fund and of undistributed income was to be divided per stirpes among respondent's descendants. The trust agreement provided that the respondent might deposit additional policies of insurance upon the life of George C. Willson and additional property, including money and securities, to be governed by the provisions of the trust indenture. During the taxable years George C. Willson, the insured, was living and the total face amount of the life insurance policies held under the trust agreement during these two years was $200,000. Respondent was the sole beneficiary under all the policies. In 1936 the net income of the trust was $20,791.79, of which $8,832.34 was used to pay life insurance premiums and the balance of $11,959.45 was accumulated and added to the trust corpus. In 1937 the net income of the trust was $18,091.72, of which $8,849.80 was used to pay life insurance premiums and the balance of $9,241.92 was accumulated and added to the trust corpus. None

of the income of the trust for the taxable years has been paid to the respondent, and the trustee filed fiduciary tax returns and paid income taxes on the entire net income of the trust during the taxable period.

The Board of Tax Appeals determined that neither the income used to pay the premiums on the insurance policies nor the income accumulated and added to the corpus of the trust was distributable to the respondent, and hence not taxable to her, and found that there were no deficiencies in income tax for the years 1936 and 1937. One member of the Board dissented.

The Commissioner relies upon the broad general definition of income contained in Section 22(a) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 825, as well as upon Section 167 for the contention that all the income of the trust should be included in computing the respondent's net income. The pertinent portion of Section 167 reads as follows:

"(a) Where any part of the income of a trust—

"(1) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, held or accumulated for future distribution to the grantor; or

"(2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor; * * *

"then such part of the income of the trust shall be included in computing the net income of the grantor."

We think that the decision of the Board of Tax Appeals was erroneous. Under the Treasury Regulations, if a grantor retains an interest in the income of a trust, such that he has failed to divest himself permanently and definitely of every right which might by any possibility enable him to have the income at some time distributed to him, actually or constructively, the income is taxable. It is immaterial whether the income may be distributed currently or accumulated for future distribution; whether the distribution is dependent on the exercise of discretion by the trustee, and whether the grantor or a trustee exercises the discretion. It is also immaterial whether the time of distribution is conditioned upon the happening of some specified event. Treas. Reg. 94, Art. 167-1.

Under section 167 the respondent is liable for taxes upon the accumulated income if she has the right to receive it at any time, or upon the happening of any specified event. Phipps v. Helvering, App.D.C., 124 F.2d 288, 291; Helvering v. Evans, 3 Cir., 126 F.2d 270. When the income becomes a part of the corpus it constitutes income accumulated for future distribution to the respondent because she has not stripped herself of every right which might enable her to have the income. Graff v. Commissioner, 7 Cir., 117 F.2d 247, 249; Irish v. Commissioner, 3 Cir., 129 F.2d 468. As pointed out in Kent v. Rothensies, 3 Cir., 120 F.2d 476, 478, certiorari denied 314 U. S. 659, 62 S.Ct. 113, 86 L.Ed. 528, the statute does not provide that income is taxable to the grantor only if it is held or accumulated for unconditional future distribution to the grantor. It is not concerned with whether the taxpayer's right to the income is conditional or unconditional, contingent or vested, for, as held in Rollins v. Helvering, 8 Cir., 92 F.2d 390, 395, certiorari denied 302 U.S. 763, 58 S.Ct. 410, 82 L.Ed. 593, the consideration is not what is done under the trust agreement, but what might be done thereunder. If there is any possibility that the income of the trust may be received by the grantor then such income is taxable to the grantor. Altmaier v. Commissioner, 6 Cir., 116 F.2d 162, certiorari denied 312 U.S. 706, 61 S.Ct. 827, 85 L.Ed 1138.

Our holding in Suhr v. Commissioner, 6 Cir., 126 F.2d 283, in no way conflicts with this conclusion. While we there decided that the income from the trust involved was not taxable to the grantor under Section 167, there was no accumulation of income, as in the instant case. The trust indenture specifically provided that the income of the trust was to be paid to the grantor's wife, and after her death, if she survived the grantor, to her children or their lawful issue. In case of the death of the wife prior to that of the grantor, the trust was to terminate. The only provision under which income might have been accumulated was conditioned upon an act or fault of beneficiaries having an adverse interest deemed to be substantial. Page 286 of 126 F.2d.

The opinion of the Board in the instant case did not discuss the Regulations or the recent decisions of the Supreme Court which have followed the "progressive endeavor by the Congress * * *

to bring about a correspondence between the legal concept of ownership and the economic realities of enjoyment or fruition." Burnet v. Wells, 289 U.S. 670, 677, 53 S.Ct. 761, 763, 77 L.Ed. 1439. In line with this endeavor the broad scope of Section 167 has been repeatedly recognized and applied to a wide variety of situations. Altmaier v. Commissioner, supra; Wenger v. Commissioner, 6 Cir., 127 F.2d 523; Kaplan v. Commissioner, 1 Cir., 66 F.2d 401. In Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655, the owner of negotiable bonds who had detached therefrom negotiable interest coupons before their due date and delivered them as a gift to his son, who collected them at maturity, was held to have realized income taxable in the amount of the coupons during the year in which they were paid. The theory upon which the court held the income taxable was that the taxpayer who was entitled to receive it had made use of his power to dispose thereof in procuring satisfactions which he would otherwise procure only by the use of the money when received. It was held that the fact that the taxpayer had precluded himself from any present possibility of collecting the income was immaterial, inasmuch as the power to dispose of income is the equivalent of ownership of it and exercise of the power constitutes enjoyment of the income itself. These statements apply, if not to the letter, to the spirit of the present controversy. Certainly in view of the provisions that the income from the trust eventually be paid to herself, or in event of the death of herself and her husband to her descendants per stirpes, and bearing in mind the family solidarity doctrine announced in Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788, it cannot be said that the payment of life insurance upon the life of respondent's husband under policies in which she herself was the sole beneficiary gave her no substantial benefit. Nor does the erection of a second trust upon the first alter the legal conclusion. It may be a case of an attempt to escape the tax by anticipatory arrangements "skillfully devised" to prevent the income when paid from vesting even for a second in the woman who owned it. Cf. Lucas v. Earl, 281 U.S. 111, 115, 50 S.Ct. 241, 74 L.Ed. 731.

The principal answer made by the respondent to these considerations is that the trust indenture differs from those considered in Altmaier v. Commissioner, supra, Kaplan v. Commissioner, supra, and a line of similar cases which have held that certainty of actual distribution into the hands of the settlor or grantor is no longer considered necessary for the application of the statute. The distinction relied upon is that the present trust indenture makes the possibility of distribution of income accumulated in the trust corpus more remote than in the cited cases since such distribution is not only conditioned upon respondent's survival of her husband but also on the existence of circumstances which would justify the trustee in invading the corpus for payments for her support and maintenance. The cited cases are claimed to be distinguishable on the basis of retention of control by the settlor through power to collect the cash surrender value of insurance policies or to change the beneficiary, or similar provisions. But we think the essential element under the recent decisions is not one of the degree of probability of actual cash distributions nor one of the extent of control by the settlor, but rather the possibility of such distributions and the consequent character of the benefit received by the settlor. Here the respondent was entitled to receive the income from the accumulated corpus of the trust at the death of her husband. Also through the medium of the trust she established for herself and her family a continuing economic security, contracting with the trustee· that for the rest of her life she would dedicate a part of her income to the preservation of these contracts, so much did they mean, as was stated in Burnet v. Wells, supra, for her "peace of mind and happiness." Under the broad phrasing of Section 167 the income is taxable to her.

Helvering v. Stuart, 63 S.Ct. 140, 87 L.Ed. ——, (announced November 16, 1942), supports the conclusion arrived at herein that the possibility of the distribution to the grantor of the income of the trust makes the income taxable to the grantor within the purview of Section 167.

We have considered the contention that the trust indenture prevents the trustee from using any part of the insurance proceeds for respondent's support and maintenance, but deem it fully answered by the plain meaning of that instrument.

■ It follows that the income used for the payment of premiums as well as that accumulated in the corpus of the trust for the taxable years was rightly added by the

Commissioner to respondent's taxable income.

The order is reversed and the case is remanded for further proceedings in accordance with this opinion.