**KENT v. UNITED STATES.**

No. 46037.

Court of Claims.

May 7, 1945.

[1] After the payment of $10,000 to Elizabeth Kent Van Alen, pursuant to the terms of the trust referred to in finding 2.

[2] After the payment of $15,000 to Elizabeth Kent Van Alen, pursuant to the terms of the trust referred to in finding 2.

[1] After the payment of $14,092.13 to Elizabeth Kent Van Alen, pursuant to the terms of the trust referred to in finding 2.

[2] The plaintiff was taxed on only $14,117.55 after the payment of $14,093.38 to A. Atwater Kent, Jr., pursuant to the terms of the trust referred to in finding 4.

[3] After the payment of $28,186.46 to Elizabeth Kent Van Alen, pursuant to the terms of the trust referred to in finding 2.

[4] After the payment of $10,000 to Virginia Tucker Kent, pursuant to the terms of the trust referred to in finding 3.

[5] After the payment of $20,000 to A. Atwater Kent, Jr., pursuant to the terms of the trust referred to in finding 4.

James O. Wynn, of New York City (Robert N. Montgomery and J. Marvin Haynes, both of Washington, D. C., on the brief), for plaintiff.

Elizabeth B. Davis, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (J. Louis Monarch and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

MADDEN, Judge. Delivered the opinion of the court:

The plaintiff claims that he was required to pay $113,938.02 more than he owed for income taxes and interest thereon for the years 1936 and 1937. The Commissioner of Internal Revenue assessed to and collected from the plaintiff taxes on the income of three trusts which the plaintiff had set up on May 20, 1932. The plaintiff was made a trustee of each of the trusts, and a trust company, a different one for each trust, was named as the other trustee. Since the trusts were similar in their provisions, except that each named a different child of the plaintiff and a different corporate trustee, a description of one of the trusts will bring out the tax question presented by each of them. We therefore describe the Elizabeth Kent Van Alen Trust.

By the trust deed the plaintiff transferred 28,762 shares of stock of the Atwater Kent Manufacturing Company to be held in trust until the death of the survivor of the grantor and his wife and his daughter Elizabeth Kent Van Alen. Out of the net income the trustees were to pay the daughter during her life the yearly sums named in an annexed schedule, which sums began at zero for 1932 and increased $5,000 each year to $75,000 for

the year 1946 at which amount they were to remain from that time on. After the death of the daughter they were to pay $10,000 a year for the maintenance and education of, during minority, and thereafter to, each of the daughter's children for life, provided that the total of these payments to the daughter's children in any year should not exceed one-half the net income of the trust for that year. After making the directed payments to the daughter or her children the trustees were, during the life of the grantor, to retain any remaining income of the trust for two years after its receipt, and then disburse the retained amounts on the June 30th or the December 31st which came first after the end of the two-year period of retention of any income (1) not to exceed $5,000 to the daughter or her children as needed to bring the payments to them for the preceding calendar year up to the maximum amounts stated for them for that year; (2) the balance to the plaintiff, if living.

The Commissioner of Internal Revenue, in assessing the disputed tax, and the Government, in this suit, urge that Section 167(a) (1) of the Revenue Act of 1936, 26 U.S.C.A.Int.Rev.Code, § 167(a) (1) made the retained income taxable to the plaintiff. It provides:

"Sec. 167. Income for Benefit of Grantor

"(a) Where any part of the income of a trust—

"(1) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, held or accumulated for future distribution to the grantor;

\*　　\*　　\*　　\*　　\*

then such part of the income of the trust shall be included in computing the net income of the grantor."

The statute seems to fit the provision in the trust deed for the retention of the income and its payment to the plaintiff. The plaintiff urges, however, that it was uncertain whether retained income was being "held or accumulated for future distribution to the grantor" since, under the trust deed, it would not be distributed to him unless he was living at the end of the two year period of retention, and some or possibly all of it might not be distributed to him even if he was alive at the end of the period, since it might

have to be used, to the extent of possibly $10,000 in any year, to make up a deficit in the share of the daughter or her children for the preceding year.

These are, without doubt, substantial uncertainties. They present the question whether Section 167(a)(1) is applicable, in the kind of situation here involved, only when the terms of the trust make it certain that the income whose taxation is in question will be paid to the grantor.

Treasury Regulation 94, promulgated under the Revenue Act of 1936, provides:

"Art. 167–1 Trusts in the income of which the grantor retains an interest.

\*　　\*　　\*　　\*　　\*

"(b) Test of taxability to the grantor.— The test of the sufficiency of the grantor's retained interest in the trust income, resulting in the taxation of such income to the grantor, is whether the grantor has failed to divest himself, permanently and definitively, of every right which might, by any possibility, enable him to have the income, at some time, distributed to him, actually or constructively."

 This is strong language, and would carry much farther than it is necessary to go to decide this case. But we think that at least the direction in which it points is correct, as an interpretation of the intent of Section 167(a) (1). In the taxation of incomes, the rate bracket in which they are placed for tax purposes is vital to the revenues. For one to unburden himself of much of his income tax, by ridding himself, pro tanto, of his income, is permissible. But a device by which one seeks to rid himself of much of the tax, by placing the income producing property in several separate trusts, thereby attempting to diminish almost geometrically, because of the elimination of higher surtax rates, the aggregate of income taxes payable on the same amount of income, while at the same time the income finds its way into the same pocket as before, deserves the careful scrutiny of any intelligent taxing system. As the plaintiff set up his trusts, he was, except for the possible deduction of $10,000 noted above, to get the income by surviving the two year period of retention. If, by failing to survive, he did not get it, it was, by the terms of the trust, to go to his wife, or to other natural objects of his bounty, in substantially the manner, when the several concurrently created trusts are considered, that other property which he

owned outright would normally go, upon his death. He had, then, as to the income of the property which he had owned completely before he put it in trust, the substance of continued ownership of the income, which substance consisted of (a) the primary right and the probability that the income would actually come into his possession and (2) the arrangement whereby, upon his death, which would keep the income from coming into his possession, it would go largely if not entirely to persons who would, normally, take by inheritance or devise what he owned when he died.

█ We think that Section 167(a) (1) intended to tax such income to the grantor. If, as the plaintiff urges, we read into the statute words requiring that the income be held unconditionally for future distribution to the grantor, we open the way to the insertion, in trust conveyances, of conditions, of various degrees of likelihood of occurrence, which would have the intent, and frequently the effect, of leaving in a grantor the income which he had before he made the grant, while requiring his less ingenious contemporaries to make up the taxes which he escaped. We do not think that Congress intended that the statute should receive any such construction. If it had so intended, it must have known that the statute was hardly worth its space in the books.

██ The plaintiff cites Commissioner of Internal Revenue v. Dean, 10 Cir. 102 F.2d 699, in which it was held that trust income, paid to a beneficiary on January 3 of a given year, was not taxable to him, but to the trust, because during the preceding year in which it was collected by the trustee, the beneficiary had no right to have it paid to him currently, and had no right that it should ever be paid to him unless he was alive on January 3, the end of the administrative year of the trust. That decision followed the express terms of the applicable statute. The beneficiary there was not the grantor, and the income was not, when received, currently payable to him. It was, therefore, taxable to the trust. The different treatment given by the statutes to the grantor as beneficiary of his own trust, and other persons as beneficiaries, is natural. The status quo, when the grantor sets out to create a trust, is that he owns the property, is entitled to its income, and is liable for taxes on that income. The trust device has been used for centuries not only for proper purposes, but, on occasion, to create appearances which do not correspond with the substance of ownership, in order to defeat some policy of the state. When, therefore, the grantor makes himself a beneficiary of a trust of his own creation, the law must be astute to see whether not only the appearance of things, but their substance, has been changed by the creation of the trust. It takes note of the status quo ante the trust, i. e., that the now beneficiary was then the complete owner. If, as in our case, it finds that after the creation of the trust he is still the one who has the primary right to enjoy the fruits of ownership, it may think it necessary to disregard the change in legal title in order to prevent some policy of the law from being nullified by a legal device. For example, one can, in most states, create a spendthrift trust for one other than himself. But when one attempts to put his own property in trust so that he may have its income to enjoy, but not to pay his debts with, the law forbids, and allows the creditors to take the property in spite of the trust. We think that Section 167(a) (1) has something of the same purpose; that one should not, by means of a trust, succeed in ridding himself of his income taxes while keeping his income. We see nothing in this statutory purpose which should cause us to give the statute a narrow construction.

The Government has urged other reasons why the plaintiff should not recover on the merits of the case, but we do not find it necessary to discuss them. The Government also vigorously contends that because, as shown in the findings, the Circuit Court of Appeals for the Third Circuit in the case of Kent v. Rothensies, 3 Cir., 120 F.2d 476, held that the plaintiff was liable, under the same trusts here involved, for the retained income of the trusts for the years 1932, 1933, and 1934, the question is now res adjudicata and we are bound to decide the case for the Government, regardless of our views as to its merits. However, since we agree with the cited decision on its merits, we prefer not to consider the res adjudicata question. Cf. Engineers' Club of Philadelphia v. United States, 42 F.Supp. 182, 95 Ct.Cl. 42, certiorari denied, 316 U.S. 700, 62 S.Ct. 1294, 86 L.Ed. 1769.

The petition will be dismissed. It is so ordered.

· WHALEY, Chief Justice, and LITTLE-TON, Judge, concur.

WHITAKER, Judge (concurring).

I concur both for the reasons stated and for the reason that in my opinion the decision of the 3rd Circuit Court of Appeals in Kent v. Rothensies, 3 Cir., 120 F.2d 476, is res adjudicata.

JONES, Judge, took no part in the decision of this case.